Andrew Perrong
Counsel for Plaintiff
Email: a@perronglaw.com
Perrong Law LLC
2657 Mount Carmel Avenue
Glenside, PA 19038
Telephone: (215) 225-5529

IN THE UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF ARIZONA

| | |
|---|---|
| Jonathan Bahr, individually and on behalf of a class of all persons and entities similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>Cactus Leads LLC<br><br>Defendant. | Case No.<br><br>**CLASS ACTION COMPLAINT** |

**Preliminary Statement**

1. Telemarketing calls are intrusive. A great many people object to these calls, which interfere with their lives, tie up their phone lines, and cause confusion and disruption on phone records. Faced with growing public criticism of abusive telephone marketing practices, Congress enacted the Telephone Consumer Protection Act of 1991. Pub. L. No. 102-243, 105 Stat. 2394 (1991) (codified at 47 U.S.C. § 227). As Congress explained, the law was a response to Americans 'outraged over the proliferation of intrusive, nuisance calls to their homes from telemarketers' *id.* § 2(6), and sought to strike a balance between '[i]ndividuals' privacy rights, public safety interests, and commercial freedoms' *id.* § 2(9).

2. "The law opted for a consumer-driven process that would allow objecting individuals to prevent unwanted calls to their homes. The result of the telemarketing regulations was the national Do-Not-Call registry. *See* 47 C.F.R. § 64.1200(c)(2). Within the federal government's web of indecipherable acronyms and byzantine programs, the Do-Not-Call registry stands out as a model of clarity. It means what it says. If a person wishes to no longer receive telephone solicitations, he can add his number to the list. The TCPA then restricts the telephone solicitations that can be made to that number. *See id.*; 16 C.F.R. § 310.4(b)(iii)(B) ('It is an abusive telemarketing act or practice and a violation of this Rule for a telemarketer to . . . initiat[e] any outbound telephone call to a person when . . . [t]hat person's telephone number is on the "do-not-call" registry, maintained by the Commission.')…Private suits can seek either monetary or injunctive

relief. *Id*…This private cause of action is a straightforward provision designed to achieve a straightforward result. Congress enacted the law to protect against invasions of privacy that were harming people.  The law empowers each person to protect his own personal rights. Violations of the law are clear, as is the remedy. Put simply, the TCPA affords relief to those persons who, despite efforts to avoid it, have suffered an intrusion upon their domestic peace." *Krakauer v. Dish Network, L.L.C*., 925 F.3d 643, 649-50 (4th Cir. 2019).

3. Moreover, As the Supreme Court has explained, "Americans passionately disagree about many things. But they are largely united in their disdain for robocalls. The Federal Government receives a staggering number of complaints about robocalls—3.7 million complaints in 2019 alone. The States likewise field a constant barrage of complaints. For nearly 30 years, the people's representatives in Congress have been fighting back. As relevant here, the Telephone Consumer Protection Act of 1991, known as the TCPA, generally prohibits robocalls to cell phones and home phones." *Barr v. Am. Ass'n of Political Consultants*, 140 S. Ct. 2335, 2343 (2020).

4. Plaintiff Jonathan Ryan Bahr ("Plaintiff") brings this action under the TCPA alleging that Defendant Cactus Leads LLC ("Defendant") sent telemarketing calls promoting their goods or services, including to individuals who were on the National Do Not Call Registry. Such calls were made without the call recipient's prior express written consent.  Plaintiff also alleges that Defendant marketed its services through the use of pre-recorded telemarketing calls.

5. Because these calls were transmitted using technology capable of generating thousands of similar calls per day, Plaintiff sues on behalf of a proposed nationwide class of other persons who received similar calls.

6. A class action is the best means of obtaining redress for the Defendant's illegal telemarketing and is consistent both with the private right of action afforded by the TCPA and the fairness and efficiency goals of Rule 23 of the Federal Rules of Civil Procedure

## Parties

7. Plaintiff Jonathan Bahr is an individual residing in Arizona.

8. Defendant Cactus Leads LLC is a Montana limited liability company.

## Jurisdiction & Venue

9. The Court has subject-matter jurisdiction under 28 U.S.C. § 1331 because the Plaintiff's claims arise under federal law.

10. Venue is proper under 28 U.S.C. § 1391(b)(2) because the calls that were initiated to the Plaintiff and the putative class that are the subject of the litigation were sent into this District and to encourage the purchase of services to be provided in this District. As such, a substantial part of the events giving rise to the claims occurred in this District.

## TCPA Background

National Do Not Call Registry:

11. The TCPA was passed in 1991 to help prevent unwanted telephone calls and solicitations, provide power to consumers to prevent unwanted solicitations, and rein in unrestricted telemarketing. *See* 47 U.S.C. § 227, *et seq.*

12. Relevantly, the TCPA provides private rights of action for three types of telemarketing-related conduct.

13. § 227(c) of the TCPA requires the FCC to "initiate a rulemaking proceeding concerning the need to protect residential telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object." 47 U.S.C. § 227(c)(1).

14. In this rulemaking proceeding, the FCC was instructed to "compare and evaluate alternative methods and procedures (including the use of … company-specific 'do not call systems …)" and "develop proposed regulations to implement the methods and procedures that the Commission determines are most effective and efficient to accomplish purposes of this section." *Id.* at (c)(1)(A), (E).

15. Pursuant to this statutory mandate, the FCC established a national "do not call" database. *In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 18 FCC Rcd. 14014 ("DNC Order").

16. This regulation is presently codified at 47 CFR 64.1200(c)(1-2).

17. Specifically, a company may not initiate any "telephone solicitation" to a telephone subscriber "who has registered his or his telephone number on the national do-

not-call registry of persons who do not wish to receive telephone solicitations that is maintained by the Federal Government." 47 CFR 64.1200(c)(2).

Robocalls Outlawed:

18.     The TCPA also makes it unlawful "to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using an automatic telephone dialing system or an artificial or prerecorded voice … to any telephone number assigned to a … cellular telephone service." 47 U.S.C. § 227(b)(1). Calls made by an ATDS or with a prerecorded or artificial voice are referred to as "robocalls" by the Federal Communications Commission ("FCC") and herein. Encouraging people to hold robocallers accountable on behalf on their fellow Americans, the TCPA provides a private cause of action to persons who receive such calls. 47 U.S.C. § 227(b)(3).

19.     In enacting the TCPA, Congress found: "Evidence compiled by the Congress indicates that residential telephone subscribers consider automated or prerecorded telephone calls, regardless of the content or the initiator of the message, to be a nuisance and an invasion of privacy." Telephone Consumer Protection Act of 1991, Pub. L. No. 102-243, 105 Stat. 2394 § 2(10). Congress continued: "Banning such automated or prerecorded telephone calls to the home, except when the receiving party consents to receiving the call or when such calls are necessary in an emergency situation affecting the health and safety of the consumer, is the only effective means of protecting telephone consumers from this nuisance and privacy invasion." *Id.* § 2(12).

20. The TCPA's sponsor described unwanted robocalls as "the scourge of modern civilization. They wake us up in the morning; they interrupt our dinner at night; they force the sick and elderly out of bed; they hound us until we want to rip the telephone out of the wall." 137 Cong. Rec. 30,821 (1991) (statement of Sen. Hollings).

21. The FCC has made clear that "prior express written consent" is required before making telemarketing robocalls to wireless numbers. Specifically, it ordered:

> [A] consumer's written consent to receive telemarketing robocalls must be signed and be sufficient to show that the consumer: (1) received clear and conspicuous disclosure of the consequences of providing the requested consent, *i.e.*, that the consumer will receive future calls that deliver prerecorded messages by or on behalf of a specific seller; and (2) having received this information, agrees unambiguously to receive such calls at a telephone number the consumer designates. In addition, the written agreement must be obtained without requiring, directly or indirectly, that the agreement be executed as a condition of purchasing any good or service.

*In the Matter of Rules & Regulations Implementing the Telephone Consumer Protection Act of 1991*, 27 FCC Rcd. 1830, 1844 ¶ 33 (2012) (footnote omitted) (internal quotation marks omitted).

## **Factual Allegations**

22. Defendant Cactus Leads LLC is a for-profit company that sells insurance leads and assists consumers in comparing or enrolling in insurance plans, including Medicare-related plans.

23. Plaintiff Bahr is a "person" as defined by 47 U.S.C. § 153(39).

24. Plaintiff's telephone number, 480-XXX-XXXX, is on the National Do Not Call Registry and has been registered continuously since November 15, 2024.

7

25. Plaintiff's telephone number is used for residential purposes and is not associated with a business.

26. Plaintiff's telephone number is assigned to a residential telephone exchange service for consumers, not a telephone exchange service for businesses.

27. Plaintiff uses the telephone number for personal, family, and household purposes.

28. Despite that fact, Plaintiff received at least three telemarketing calls from Defendant Cactus Leads LLC in 2025.

29. On March 14, 2025, at approximately 7:51 a.m., Plaintiff rejected a call from telephone number 480-727-0935.

30. On April 24, 2025, Plaintiff rejected a second call from telephone number 480-727-9896.

31. On July 23, 2025, at approximately 7:51 AM Local Time, Plaintiff answered a third call from telephone number 480-727-6825.

32. Upon answering the July 23, 2025, call, Plaintiff was greeted by an automated avatar that initiated the call by referencing Medicare-related information.

33. The automated avatar spoke in a robotic, monotone voice that lacked emotion or natural speech patterns and did not sound like a live human caller.

34. Plaintiff asked an off-topic or unscripted question during the call, and the response from the avatar did not match the question or made no sense, further indicating that the call was pre-recorded or generated by artificial intelligence.

35. The avatar asked Plaintiff a series of scripted questions related to Medicare and then stated that Plaintiff would be transferred to a representative.

36. The call was subsequently transferred to a live individual identifying herself as Cynthia Smith, who provided a callback number of 833-873-4100, extension 1067.

37. Plaintiff later called the provided number and confirmed that the call originated from Clear Link.

38. Clear Link later identified that the call had originated from or been generated by Cactus Leads LLC.

39. The July 23, 2025, call was intended to promote Defendant's insurance-related business and generate sales leads.

40. Plaintiff never asked for any of the calls.

41. Plaintiff never did any business with Defendant Cactus Leads LLC.

42. Plaintiff never provided prior express consent for Defendant to place telemarketing calls to his telephone number.

43. The calls were unwanted.

44. The calls were nonconsensual encounters.

45. Plaintiff's privacy has been violated by the above-described telemarketing calls.

46. Plaintiff and all members of the Classes have been harmed by Defendant's acts because their privacy was violated and they were annoyed and harassed. In addition, the calls occupied their telephone lines, storage space, and bandwidth, rendering them

unavailable for legitimate personal communications, including while driving, working, and performing other critical tasks.

## Class Action Allegations

47. Plaintiff incorporates by reference all other paragraphs of this Complaint as if fully stated herein.

48. Plaintiff brings this action on behalf of herself and the following classes (the "Classes") pursuant to Federal Rule of Civil Procedure 23(b)(2) and/or (b)(3).

49. Plaintiff proposes the following Class definitions, subject to amendment as appropriate:

**Do Not Call Registry Class:** All persons in the United States whose (1) telephone numbers were on the National Do Not Call Registry for at least 31 days, (2) but who received more than one telemarketing call from or on behalf of Defendant (3) within a 12-month period (4) from four years prior to the filing of the case through the date of class certification.

**Early/Late Calls Class:** All persons in the United States who from four years prior to the filing of this action through class certification (1) Defendant (or a third-party acting on behalf of Defendant) called, (2) within any 12-month period, (3) promoting insurance goods or services, (4) before the hour of 8 a.m. or after 9 p.m. (local time at the called party's location).

**Pre-Record Class:** All persons in the United States who, (1) within four years prior to the commencement of this litigation until the class is certified (2) received one or more calls on their cellular telephone (3) from or on behalf of Defendant, (4) sent using the same, or substantially similar, pre-recorded message used to contact the Plaintiff.

50. Plaintiff is a member of and will fairly and adequately represent and protect the interests of the Classes as he has no interests that conflict with any of the Class members.

51. Plaintiff and all members of the Classes have been harmed by the acts of Defendant, including, but not limited to, the invasion of their privacy, annoyance, waste of time, the use of their telephone power and network bandwidth, and the intrusion on their telephone that occupied it from receiving legitimate communications.

52. Members of the Classes as defined above, are identifiable through Defendant's dialer records, other phone records, and phone number databases.

53. Plaintiff does not know the exact number of members in the Classes, but Plaintiff reasonably believes Class members number, at minimum, in the hundreds.

54. The joinder of all Class members is impracticable due to the size and relatively modest value of each individual claim.

55. Additionally, the disposition of the claims in a class action will provide substantial benefit to the parties and the Court in avoiding a multiplicity of identical suits.

56. There are well defined, nearly identical, questions of law and fact affecting all parties. The questions of law and fact, referred to above, involving the class claims predominate over questions that may affect individual Class members.

57. There are numerous questions of law and fact common to Plaintiff and to the proposed Classes, including, but not limited to, the following:

   a. Whether Defendant made telemarketing calls to numbers on the National Do Not Call Registry;

   b. Whether Defendant made calls during prohibited hours;

   c. whether a pre-recorded message was used to send calls;

      d. whether the telemarketing calls at issue were made to Plaintiff and members of the Classes without first obtaining prior express written consent to make the call;

      e. whether Defendant's conduct constitutes violations of the TCPA; and

      f. whether members of the Classes are entitled to treble damages based on the willfulness of Defendant's conduct.

58. Plaintiff has retained counsel with substantial experience in prosecuting complex litigation and class actions, and especially TCPA class actions. Plaintiff and his counsel are committed to vigorously prosecuting this action on behalf of the other members of the Class and have the financial resources to do so.

59. Common questions of law and fact predominate over questions affecting only individual Class members, and a class action is the superior method for fair and efficient adjudication of the controversy. The only individual question concerns identification of Class members, which will be ascertainable from records maintained by Defendant and/or its agents.

60. The likelihood that individual members of the Class will prosecute separate actions is remote due to the time and expense necessary to prosecute an individual case.

61. Excluded from the Class are counsel, Defendant, and any entities in which Defendant has a controlling interest, the Defendant's agents and employees, any judge to whom this action is assigned, and any member of such judge's staff and immediate family.

62. Plaintiff is not aware of any litigation concerning this controversy already commenced by others who meet the criteria for class membership described above.

### FIRST CAUSE OF ACTION
**Telephone Consumer Protection Act**
**(Violations of 47 U.S.C. § 227)**
**(On Behalf of Plaintiff and the National Do Not Call Registry Class)**

63. Plaintiff incorporates the allegations from all previous paragraphs as if fully set forth herein.

64. The foregoing acts and omissions of Defendant and/or its affiliates, agents, and/or other persons or entities acting on Defendant's behalf constitute numerous and multiple violations of the TCPA, 47 U.S.C. § 227, by making telemarketing calls, except for emergency purposes, to Plaintiff and members of the National Do Not Call Registry Class despite their numbers being on the National Do Not Call Registry.

65. Defendant's violations were negligent, willful, or knowing.

66. As a result of Defendant's and/or its affiliates, agents, and/or other persons or entities acting on Defendant's behalf, violations of the TCPA, 47 U.S.C. § 227, Plaintiff and members of the National Do Not Call Registry Class are entitled to an award of up to $500 and in damages for each and every call made and up to $1,500 in damages if the calls are found to be willful.

67. Plaintiff and the members of the National Do Not Call Registry Class are also entitled to and do seek injunctive relief prohibiting Defendant and/or its affiliates, agents, and/or other persons or entities acting on Defendant's behalf from making

telemarketing calls to telephone numbers registered on the National Do Not Call Registry, except for emergency purposes, in the future.

### SECOND CAUSE OF ACTION
**Violation of the Telephone Consumer Protection Act**
**(47 U.S.C. § 227(c)(5) & 47 C.F.R. § 64.1200(c))**
**(On Behalf of Plaintiff and the Early/Late Call Class)**

68. Plaintiff realleges and incorporates by reference each and every allegation set forth in the preceding paragraphs.

69. It is a violation of the TCPA to initiate any telephone solicitation before 8:00 AM or after 9:00 PM, local time at the called party's location, as the Defendant did for some of the calls received by Plaintiff. 47 C.F.R. § 64.1200(c)(1).

70. Defendant and/or its affiliates, agents, and/or other persons or entities acting on Defendant's behalf violated the TCPA by sending such messages outside the permitted hours.

71. These violations were willful or knowing.

72. As a result of Defendant and/or its affiliates, agents, and/or other persons or entities acting on Defendant's behalf's violations of the TCPA's calling hours restrictions, Plaintiff and members of the Early/Late Call Class are each entitled to an injunction and up to $500 in damages for each such violation. 47 U.S.C. § 227(c)(5).

73. Because such violations were willful or knowing, the Court should treble the amount of statutory damages, pursuant to 47 U.S.C. § 227(c)(5).

### THIRD CAUSE OF ACTION
**Statutory Violations of the Telephone Consumer Protection Act**
**(47U.S.C. 227, et seq.) on behalf of the Robocall Class**

74. Plaintiff incorporates by reference the foregoing allegations as if fully set forth herein.

75. The Defendant violated the TCPA by or causing to be sent via pre-recorded calls to the cellular telephones of Plaintiff and members of the Robocall Class using a pre-recorded message without their prior express written consent.

76. As a result of Defendant's violations of 47 U.S.C. § 227 *et seq.*, Plaintiff and Robocall Class members are entitled to an award of $500 in statutory damages for each and every violation of the statute, pursuant to 47 U.S.C. § 227(b)(3)(B).

77. The Plaintiff and Robocall Class Members are entitled to an award of treble damages if their actions are found to have been knowing or willful.

78. Plaintiff and Robocall Class members are also entitled to and do seek injunctive relief prohibiting Motive from using a pre-recorded voice in the future, except for emergency purposes.

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff, individually and on behalf of the Class, prays for the following relief:

Injunctive relief prohibiting Defendant from calling telephone numbers advertising its goods or services, except for emergency purposes, to any residential number on the National Do Not Call Registry in the future, our outside the permitted hours in the future;

That the Court enter a judgment awarding Plaintiff and all Class members statutory damages of $500 for each violation of the TCPA and $1,500 for each knowing or willful violation; and

An order certifying this action to be a proper class action pursuant to Federal Rule of Civil Procedure 23, establishing a Class the Court deems appropriate, finding that

Plaintiff is a proper representative of the Class, and appointing the lawyers and law firms representing Plaintiff as counsel for the Class;

Such other relief as the Court deems just and proper.

**JURY DEMAND**

**Plaintiff requests a jury trial as to all claims of the complaint so triable.**

Dated: January 1, 2026

*/s/ Andrew Perrong*

Andrew Perrong
Email: a@perronglaw.com
Perrong Law LLC
2657 Mount Carmel Avenue

Glenside, PA 19038
Telephone: (215) 225-5529
*Subject to Pro Hac Vice*

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25